IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>)<br>vs.   )<br>)<br>JEFFREY OWEN BARNETT,   )<br>)<br>Defendant.   ) | Criminal No. 15-250<br>Judge Nora Barry Fischer |

## MEMORANDUM ORDER

Presently before the Court are Defendant Jeffrey Owen Barnett's pro se Motions for Compassionate Release, (Docket Nos. 133; 135; 137), the Government's Response in opposition, (Docket No. 139), Defendant's Reply, (Docket No. 142), the Government's Sur-Reply, (Docket No. 144), and the Government's Supplement, (Docket No. 148). Defendant's motions are further supported by additional evidence, including medical records and other relevant documents. (Docket Nos. 135-1; 137-1; 149). Defendant seeks to reduce the 21-month sentence imposed by this Court for supervised release violations to time served based on his physical health conditions including asthma and hypertension, as well as the risks posed by the COVID-19 pandemic, including the spread of same at FCI Hazelton. (Docket Nos. 133; 135; 137; 142). The Government counters that compassionate release is not warranted because: Defendant's medical records do not support a conclusion that he is at high risk for severe symptoms if he contracts COVID-19 nor is he unable to provide self-care within the correctional environment during the pandemic; and, the § 3553(a) factors otherwise do not justify a reduction in his sentence for the supervised release violations at issue in this case. (Docket Nos. 139; 144; 148). After careful consideration of the parties' positions and for the following reasons, Defendant's Motions [133] [135] [137] are denied, as the Court declines to exercise its discretion to reduce his sentence at this time.

1

The Court initially turns to the prevailing legal standard. "[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." McMillan v. United States, 257 F. App'x 477, 479 (3d Cir. 2007); see also Dillon v. United States, 560 U.S. 817, 819 (2010) ("A federal court generally may not modify a term of imprisonment once it has been imposed."). One such specific authorization is the First Step Act's amendment of 18 U.S.C. § 3582. See United States v. Pawlowski, 967 F.3d 327, 329 (3d Cir. 2020). Pursuant to that provision, a court may modify a defendant's term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

> In addition, the reviewing court must consider: (1) whether the defendant has exhausted the appropriate administrative remedies; (2) the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable; and (3) whether such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

United States v. Burrus, Crim. No. 19-284, 2020 WL 3799753, at *4 (W.D. Pa. Jul. 7, 2020) (citing Graves, Crim. No. 17-318, Docket No. 28 (W.D. Pa. Jun. 10, 2020) (Hornak, J.) and 18 U.S.C. § 3582(c)(1)(A)(i)).

At the outset, the Government does not contest that Defendant has sufficiently exhausted administrative remedies as he made a request to the Warden at FCI Hazelton which was denied. (Docket No. 139). However, the Government opposes the remaining factors and his request for compassionate release. (Docket Nos. 139; 144; 148). Therefore, it is Defendant's burden to show: "extraordinary and compelling reasons" justifying such reduction, 18 U.S.C. § 3582(c)(1)(A)(i); that the section 3553(a) factors support the requested reduction; and "whether such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." Burrus, 2020 WL 3799753, at *4 (citation omitted). In addition, under the relevant policy statement in the

2

Guidelines, the Court is to consider whether the defendant is a danger to the safety of any other person or the community as provided in 18 U.S.C. § 3142(g). *See* U.S.S.G. § 1B1.13(2).

In this Court's estimation, Defendant has not sufficiently demonstrated that the Court should exercise its discretion to grant him compassionate release based on his medical ailments, which appear to be controlled with adequate treatment, the general risks posed by the COVID-19 pandemic and the spread of COVID-19 at the institution where he is housed. The Court of Appeals has held that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *cf. United States v. Roeder*, 807 F. App'x 157, 161 (3d Cir. 2020) ("the existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit."). The Court recognizes that there was an outbreak of COVID-19 cases at FCI Hazelton. *See* https://www.bop.gov/coronavirus/ (last visited 3/2/2021). However, the BOP reports that there are currently 3 positive cases among the inmate population, while 148 inmates have recovered, and there was one death at the facility. *Id*. With that said, the Court has not been presented with any evidence that Defendant has tested positive or exhibited any symptoms consistent with COVID-19. To the contrary, the medical records reveal that he has tested negative on at least two prior occasions. (*See* Docket No. 149 at 61; 95). As this Court has held previously, "[t]he existence of the virus in a prison – even the level of infection at [an institution where an outbreak has occurred] – is not sufficient to establish extraordinary and compelling circumstances without some proof that the defendant is at more severe risk for infection than [her] fellow inmates." *United States v. Williams*, No. CR 18-335, 2020 WL

3

4934659, at *5 (W.D. Pa. Aug. 24, 2020) (quoting *United States v. Thorton*, Crim. No. 2:18-167, 2020 WL 4368155, at *4 (W.D. Pa. Jul. 29, 2020)).

Next, neither Defendant's age of 60[1] nor any of his physical health ailments, (including asthma; hypertension; enlarged prostate; and, hyperlipidemia), are listed by the CDC as presenting a severe risk of complications from COVID-19.  *See e.g., United States v. George Alexis Munoz,* 2020 WL 7074351, at *2 (D. N.J. Dec. 3, 2020) ("Early on in the pandemic, the CDC listed moderate-to-severe asthma as a condition that did place infected individuals at an increased risk of severe illness. That was revised, and as of this writing, moderate-to-severe asthma might present an increased risk."); *Williams,* 2020 WL 4934659, at * 5 ("The National Asthma Education and Prevention Program has classified asthma as moderate if: (1) symptoms occur daily and require the use of inhaled short-acting asthma medication every day; (2) symptoms interfere with daily activities; (3) nighttime symptoms occur more than once per week, but do not happen every day; or (4) lung function tests are abnormal."); *United States v. Solomon*, No. CR 05-350, 2020 WL 5231326, at *5, n.5 (W.D. Pa. Sept. 2, 2020) ("The CDC has stated that individuals with moderate to severe asthma or hypertension 'might be at an increased risk for severe illness from COVID-19.'"); *United States v. Anico,* 2020 WL 5407913 (E.D. Pa. Sept. 9, 2020) (noting that hyperlipidemia and inflammatory disease of the prostate are not classified by CDC as risk factors for severe illness from COVID-19).  Here, Defendant's medical records reveal that he has moderate cases of asthma and hypertension which are controlled with prescription medication and monitoring by physicians. (Docket No. 149).  With respect to his asthma diagnosis, the records show that Defendant's condition is described as stable and he is prescribed an albuterol inhaler to use as needed but is not on daily medications. (*Id*. at 19, 21). He denied having any asthma attacks

---

[1] Defendant will turn 61 years old in April of 2021.

within the past year; denied any other respiratory problems; and, refused an influenza vaccine in October of 2020. (*Id*. at 21, 62). His hypertension condition is likewise well controlled with daily medications, (i.e., hydrochlorothiazide 12.5 mg and Norvasic 5 mg). (*Id*. at 19). Upon exam, he showed mild cardiomegaly but no evidence of acute cardiopulmonary process. (*Id*. at 19-21). A baseline EKG exam was performed with no negative results. (*Id*. at 25, 60). Finally, the medical records do not reveal any changes in Defendant's physical condition since he appeared before the Court at the supervised release violation hearing in July of 2020, at which time his medical ailments and the ongoing COVID-19 pandemic were considered by the Court in fashioning an appropriate sentence in this case.

Overall, Defendant is not entitled to compassionate release because he has failed to show that he "suffers from a terminal illness or an ailment, which, coupled with the potential spread of COVID-19, would make [him] unable to provide self-care in a correctional environment." *United States v. Wallace*, Crim. No. 19-49, Civ. No. 20-637, 2020 WL 4003663, at *4 (W.D. Pa. Jul. 15, 2020) (citing *United States v. Hammond*, Crim. No. 18-184, 2020 WL 2126783, at *4 (W.D. Pa. May 5, 2020)).

Even if Defendant had met his burden to show extraordinary and compelling reasons for release, the risks presented by his medical conditions and the COVID-19 pandemic do not outweigh the other § 3553(a) factors supporting the 21-month term of incarceration in his case, of which he has served approximately 10 months to this point. *See Pawlowski*, 967 F.3d at 330 ("we cannot conclude that the District Court acted unreasonably in determining that the substantial sentencing reduction required for granting compassionate release here—a reduction from 15 years to less than two years—would be inconsistent with the § 3553(a) factors."). The Court has once again carefully considered all of the § 3553(a) factors and finds that Defendant's "history and

characteristics" and "the need […] to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant" do not justify a sentence reduction. 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C).

Neither party appealed the length of the 21-month sentence and the Court believes that such sentence remains sufficient, but not greater than necessary to meet all of the goals of sentencing in this case. See 18 U.S.C. § 3553(a)(1). The 21-month sentence accounts for the seriousness and immediacy of the violations, as Defendant admitted to committing a series of violations within 6 months of the commencement of his term of supervised release following a 51-month sentence for three serious felony firearms convictions. See United States v. Young, 634 F.3d 233, 241 (3d Cir. 2011) (quotation omitted) ("criminal activity of the same sort underlying the offense of conviction shortly after the defendant's discharge from custody surely bespeaks a breach of trust."). The nature of the grade "B" violations, including repeated failed drug tests, committing new crimes, and failing to report police contacts to the Probation Office, also represented an affront to the Court's authority and a substantial breach of trust. Id. Intermediate sanctions and alternative treatment options were not successful in bringing Defendant into compliance with his supervised release conditions as his conduct escalated to the point of his commission of new crimes in March of 2020 at the height of the COVID-19 pandemic, disregarding stay-at-home orders and other restrictions in place at the time.[2] (Docket No. 92). Additionally, the Court showed Defendant considerable leniency at the original sentencing hearing, adopting a Rule 11(c)(1)(C) plea agreement for 51 months' incarceration which was a substantial variance below the advisory guidelines range of 92-115 months' incarceration. See

---

[2] The Court notes that Defendant did not admit to the underlying state charges from this March 2020 episode at the violation hearing and that those charges remain pending in state court. See Comm. v. Jeffrey Barnett, Docket No. CP-02-CR-0003491-2020 (C.P. Allghy 2020).

U.S.S.G. § 7B1.4, cmt. n.4 ("Where the original sentence was the result of a downward departure (e.g., as a reward for substantial assistance), or a charge reduction that resulted in a sentence below the guideline range applicable to the defendant's underlying conduct, an upward departure may be warranted.").

At the same time, the Court previously considered Defendant's efforts at post-offense and post-sentencing rehabilitation, his medical ailments, the ongoing COVID-19 pandemic, as well as the impact of COVID-19 on prison conditions and the lack of access to programming, including drug counseling and treatment, when it imposed a sentence at the low end of the advisory guidelines range of 21-27 months' incarceration. Accordingly, it appears to the Court that there remains a clear need to deter Defendant from committing additional crimes and that his conduct while on supervised release shows that he continues to pose a significant threat to the community.[3] *See* 18 U.S.C. § 3553(a)(2); *see also* 18 U.S.C. § 3142(g). Finally, since Defendant has served only half of the lawfully imposed sentence, and there have been no meaningful changes to his medical conditions demonstrating increased COVID-19 risk factors, the Court holds that reducing the sentence to time served, as requested by the defense, "would be inconsistent with the section 3553(a) factors." *Pawlowski*, 967 F.3d at 330.

For all of these reasons,

IT IS HEREBY ORDERED that Defendant's Motions seeking compassionate release [133] [135] [137] are DENIED.

> *s/Nora Barry Fischer*
> Nora Barry Fischer
> Senior U.S. District Judge

Date:   March 2, 2021

---

[3]  The Probation Office also reports that Defendant's release plan is not currently viable as they have not approved his request to reside with his partner. (Docket No. 148).

cc/ecf: All counsel of record.

    Jeffrey Owen Barnett
    BOP # 35986-068
    FCI Hazelton
    Bruceton Mills, WV 26525 (via U.S. mail)